UNITED STATES DISTRICT
COURT DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 18-11318-RGS

KIMLAN T. PHAM

v.

DEUTSCHE BANK TRUST COMPANY AMERICAS, OCWEN LOAN
SERVICING, LLC and GMAC MORTGAGE, LLC[1]

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

June 3, 2019

STEARNS, D.J.

Defendants Deutsche Bank Trust Company Americas, as Trustee for Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2004-QS2 (Deutsche Bank as Trustee) and Ocwen Loan Servicing, LLC (Ocwen) seek summary judgment on plaintiff Kimlan Pham's Complaint. Defendants argue that there is no evidentiary support in the record for Pham's claim of a violation of the Fair Housing Act, 42 U.S.C.

---

[1] Kimlan Pham filed this case on June 25, 2018. Ocwen Loan Servicing, LLC, answered on July 24, 2018; Deutsche Bank Trust Company Americas answered on August 6, 2018. On September 13, 2018, Pham was reminded that the civil rules provided her 90 days to make service, and that she risked dismissal of her claims against GMAC Mortgage, LLC (GMAC) pursuant to Fed. R. Civ. P. 4(m) and Local Rule 4.1(b) if she failed to file proof of service within twenty-one days of the Order (by October 4, 2018). She did not, and GMAC was dismissed without prejudice on October 15, 2018.

3601, *et seq.* (FHA), or her associated claim of breach of contract. Pham opposes the motion, contending that although Ocwen offered her at least three loan modifications, the modification "offers did not make any sense [and she] should not make a commitment to an offer without knowing the fact[s]." Opp'n Aff. ¶ 14.

BACKGROUND

The material undisputed facts are as follows. John S. Leone, Pham's husband, receives benefits from the Social Security Administration for physical disabilities, including blindness and mobility impairments. Leone is a military veteran who served during the Vietnam war.

On December 4, 2003, Pham and her husband obtained a loan from Homecomings Financial Network for the purchase of a home at 104 Adams Street in Dunstable, Massachusetts. Pham and Leone executed a note in the amount of $393,000. The loan was serviced either by Homecomings Financial, LLC, or GMAC, until February 16, 2013, when Ocwen became the loan servicer.[2] On March 1, 2009, Pham and Leone entered into a Fixed Rate

---

[2] Ocwen purchased certain servicing rights from the bankruptcy involving GMAC and its related entities, which included the servicing rights for Pham and Leone's loan. Pursuant to the terms of the Asset Purchase Agreement, Ocwen is not responsible for the liabilities of GMAC. *See In re: Residential Capital, LLC,* Case No. 12-12020, Doc. No. 2246 (U.S. Bankr. Ct. S.D.N.Y.),

Loan Modification Agreement with Homecomings in the original loan amount of $393,000. The Agreement required monthly payments of $2,264.50 with interest at 5.4% a year. Pham and Leone subsequently defaulted on the October 11, 2012 payment, and have not since made any loan payments to Homecomings, GMAC, or Ocwen.

Pham alleges that she "made many attempts to refinance the home and to lessen the amount of the monthly payments to no avail." MCAD Complaint, Dkt #25-1 at 13. Pham states that she was told that under the Home Affordable Modification Program (HAMP) she could lower her interest rate to 2%. Pham asserts that when she called Ocwen to refinance, an employee told her that she "would not be eligible to refinance [because] . . . too much of [her] income came from her husband's disability income." *Id.* However, on February 19, 2016, Ocwen wrote to Pham and Leone stating that they had been approved to participate in a HAMP trial period plan. The Plan required them to make payments in the amount of $2,229.30 on April 1, May 1, and June 1, 2016, on the "unpaid principal balance plus certain capitalized arrearages and fees, an interest rate of 3.25000%, and a fixed term of 40 years." Dkt 32-3 at 4. They were told that they would be

---

https://www.kccllc.net/rescap/document/1212020121121000000000002 (last visited May 20, 2019.)

responsible "for an escrow shortage of $2,604.78, which they could pay in a lump sum when the loan is modified or over the next sixty months in an amount of $43.41 per month." *Id.* Pham and Leone were also assured that if they made timely payments and submitted the required documents (the Streamline HAMP Affidavit and the signed modification agreement) by May 1, 2016, the modification would become permanent. Ocwen provided a packet of documents referencing an alternative mortgage assistance plan that might qualify them for an even lower monthly payment. *Id.* at 5. Ocwen included a flyer advertising free financial education and coaching services from the Homeownership Preservation Foundation. Pham and Leone did not complete any of the required documents or make any of the required payments. Consequently, Ocwen deemed the modification offer under HAMP declined.

On May 5, 2016, Ocwen sent Pham and Leone a second letter stating that they had been approved for another HAMP trial period plan. Under the terms of this offer, Pham and Leone were required to make trial payments in the amount of $2,389.26 on June 1, July 1, and August 1, 2016, and complete the related HAMP documents. If they did so, the interest rate would be fixed at 3.25% annually, for a term of 210 months. Again, Pham and Leone did not make any payments or submit the required documents. Pham claims that

4

she did not "submit [her] first trial payment . . . because Ocwen failed to modify her current interest rate of [her] home loan which was 5.4% at the time." Dkt. #25-1.

Ocwen thereafter initiated foreclosure proceedings on Pham's Adams Street property. On March 15, 2017, Ocwen notified Pham and Leone that Nationstar would begin servicing their loan on April 3, 2017. To date, there has been no foreclosure on Pham's residence.

On April 10, 2017, Pham filed a charge of discrimination against defendants with the Massachusetts Commission Against Discrimination (MCAD), alleging discrimination because of her husband's "disabilities and the public assistance that he receives" and her related efforts to obtain a modification of her loan. The MCAD issued a Notice of Final Disposition on August 28, 2017, finding a lack of probable cause to support Pham's charge. On October 2, 2017, Pham appealed the MCAD's decision. On May 15, 2018, the MCAD affirmed the decision and dismissed Pham's charge.

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). A material fact is one which has the "potential to affect the outcome of the suit under applicable law." *Nereida-Gonzalez v. Tirado-Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). In assessing the genuineness of a material dispute, the facts are to be "viewed in the light most flattering to the party opposing the motion." *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995).

The FHA prohibits "discriminat[ion] against any persons in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin . . . [or] because of a handicap of . . . that person." 42 U.S.C. §§ 3604(b), 3604(f)(2)(A). To prove a violation of the FHA under a theory of handicap discrimination, plaintiff must show either that defendants acted with discriminatory intent, or that their actions resulted in a disparate impact on her. *See Macone v. Town of Wakefield*, 277 F.3d 1, 5 (1st Cir. 2002). "A plaintiff can show discriminatory intent by either direct or indirect evidence." *Pina v. Town of Plympton*, 529 F. Supp. 2d 151, 155 (D. Mass. 2007), quoting *Caron v. City of Pawtucket*, 307 F. Supp. 2d 364, 368 (D.R.I. 2004). However, Pham bears the initial burden of

establishing a prima facie case of discrimination by a preponderance of the evidence. *See Thompson v. Coca-Cola Co.,* 522 F.3d 168, 176 (1st Cir. 2008). To meet this burden under the FHA, Pham must show that: (1) she is a member of or is closely associated with a member of a protected class; (2) she applied for and was qualified for the housing opportunity in question; (3) defendant rejected her claim to the housing opportunity; and (4) the housing opportunity remained available thereafter. *See Lindsay v. Yates*, 578 F. 3d 407, 414-415 (6th Cir. 2009); *Mitchell v. Shane*, 350 F. 3d 39, 46 (2d Cir. 2003).

As a preliminary matter, Deutsche Bank appears to have been improperly named in the Complaint as it did not service Pham's loan, was not involved in evaluating her loan modification requests, never communicated directly with her regarding the modifications, and did not initiate the foreclosure proceedings; these actions undertaken by Ocwen.

Moreover, it is undisputed that Ocwen never rejected Pham's request for a loan modification. Instead, it offered Pham and Leone two successive HAMP loan modifications in 2016, both of which they rejected by failing to make the three required monthly trial payments or complete the necessary loan documents. Pham admits that she received the trial plans offers, refused to take Ocwen's telephone calls, and failed to make her trial plan

7

mortgage payments as required by HAMP (nor has she made any mortgage payment since October of 2012). While Pham asserts that she could not afford the payments, and that she did not understand the offers, she admits that she never reached out to Ocwen for the further explanation that Ocwen offered to provide itself or by referring to a third-party consumer support group.[3] At bottom, there is simply no evidence that Pham and Leone were eligible for a "housing opportunity" under HAMP that they were denied. Even if Pham was able to make a *prima facie* showing of discrimination or an intent to discriminate – she has not – Ocwen had a perfectly legitimate, non-discriminatory reason for not proceeding with the loan modification, namely Pham's own inaction.

With regard to the breach of contract claim, Pham alleges that Ocwen failed to notify her that the servicing of her mortgage was being transferred to Nationstar. Even were that a fact of some material significance, it is not a fact. The record evidence establishes that Ocwen provided written notice to

---

[3] In both modification packages, Ocwen offered the name of Leone and Pham's "relationship officer" [John Lindsey] to whom they were invited to call with any questions. Opp'n at Ex. 13. Each package listed pages of "frequently asked questions" and included Customer Care Center toll-free numbers to "call with questions." *Id.* The mailings also included a "Homeowners Hope Hotline" "to obtain free HUD-certified counseling services in a variety of languages." *Id.* at 1.

Pham and Leone on March 15, 2017, that Nationstar would assume the servicing of their loan. *See* Ocwen Aff. at Ex. 5 (Dkt 32-5).

### ORDER

For the foregoing reasons, defendants' motion for summary judgment is <u>ALLOWED</u>. The Clerk will enter judgment for the defendants on all claims and close the case.

SO ORDERED.

/s/ Richard G. Stearns_____
UNITED STATES DISTRICT JUDGE